# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# JONESBORO DIVISION

ANITA RODERY                                                                                           PLAINTIFF

VS.                                      CASE NO. 3:14CV00171 JTK

CAROLYN W. COLVIN, Acting Commissioner,
   Social Security Administration                                                     DEFENDANT

### ORDER

    Plaintiff, in her appeal of the final decision of the Commissioner of the Social Security Administration to deny her claim for Disability Insurance benefits (DIB), contends the Administrative Law Judge (ALJ) erred: (1) in failing to find that she met a Listing; (2) in determining the plaintiff's residual functional capacity (RFC); and (3) in finding the plaintiff could perform her past relevant work. The parties have ably summarized the medical records and the testimony given at the administrative hearing conducted on February 12, 2013. (Tr. 22-41). The Court has carefully reviewed the record to determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. 42 U.S.C. § 405(g).

    **Meeting a Listing:** It is the plaintiff's burden to show disability by meeting a Listing at Step Three. This decision is based solely on the medical evidence, and that the plaintiff must meet all the criteria in a Listing. *Marciniak v. Shalala*, 49 F.3d 1350, 1353 (8th Cir. 1995).

    Here, the ALJ found the plaintiff met no Listing, and noted that particular attention was given to Listing 1.02, dealing with major dysfunction of a joint, and Listing 1.04, dealing with

disorders of the back.  Regarding Listing 1.02, the ALJ found:

> . . . the specified criteria required of the Listing were not demonstrated by the available medical evidence.  Specifically, the Listing requires gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and finding on appropriate medically acceptable imaging of joint space narrowing, bony destruction or ankylosis of the affected joint.  The Listing also requires involvement of one major peripheral joint resulting in inability to perform fine and gross movements effectively as defined in 1.00B2c and/or inability to ambulate effectively as defined in 1.00B2b.  In this case, the evidence does not demonstrate that the claimant has the degree of difficulty in performing fine and gross movements as defined in 1.00B2c or the degree of difficulty in ambulating as defined in 1.00B2b.

(Tr. 11).

Apparently[1] the plaintiff is arguing that she met Listing 1.02 because she was unable to perform fine and gross movements effectively and/or she was unable to ambulate effectively. Simply stating that the ALJ erred in this regard does not show that a Listing was met. The plaintiff's assertions of meeting these Listings appear to rest primarily on acceptance of her subjective allegations. *Sullivan v. Zebley*, 493 U.S. 521 (1990).  For example, she cited her subjective assertions of full body pain, of her need for help with dressing, and of her difficulties in driving long distances.  This testimony, however, is not medical evidence, which is required at Step 3.  Her treating physicians, Dr. Ball and Dr. Muse, do not provide any evidence of her inability to perform fine and gross movements effectively and/or her inability to ambulate effectively in their treatment notes.  Instead, Dr. Ball noted intact rotator cuff function of both shoulders, and Dr. Muse found her hand grips were equal.  (Tr. 202, 239).  Not included in the transcript is a medical source statement

---

[1] The plaintiff's brief, at page 8, suggests the evidence *does not* demonstrate the requisite degree of difficulty in performing fine and gross movements or in ambulating.  We conclude this is a typographical error.

from Dr. Muse.[2]  This statement, signed on September 18, 2012, presents a confusing view of the plaintiff and her abilities.  Dr. Muse indicates she can lift less that 10 pounds, can stand less than 2 hours, can sit about 2 hours, and is unable to reach, finger, or handle items.  Dr. Muse leaves unanswered a question regarding side effects from medication.  Hydrocodone is the sole medication listed.  Dr. Muse answers "never" to the question of how often the plaintiff's impairments or treatment would cause her to be absent from work.  The form asks Dr. Muse to list the objective medical findings supporting the limitations he lists, and his response is "yes".  Docket entry no. 12-1, page 2.

Two reasons exist for discounting the medical source statement of Dr. Muse.  First, it is unclear what, if any, medical findings underlie the conclusions he reaches.  Second, the conclusions are dramatically at odds with his own treatment notes, which show no diagnosis of limitations consistent with those on the medical source statement.  Instead, the treatment notes reflect a variety of diagnoses, including anxiety, foot pain, sinusitis, depression, and fibromyalgia.  (Tr. 254-264).  While a treating physician's well-documented diagnosis is typically afforded controlling weight, the ALJ may discount or even disregard a treating physician's opinions if "other medical assessments are supported by better or more thorough medical evidence or where a treating physician renders inconsistent opinions that undermine the credibility of his opinion."  *See Choate v. Barnhart*, 457 F.3d 865, 869 (8th Cir. 2006) (internal quotations omitted).  The conclusions in the medical source statement, even assuming it was properly introduced into the record, are not credible as they are

---

[2] At the outset of the administrative hearing, plaintiff's attorney referenced the medical source statement and indicated his plan to "e-file" that statement after the hearing. (Tr. 24).  It is unclear what transpired, but the medical source statement was not made part of the transcript.  As a result, the ALJ does not address the statement in her opinion.  The plaintiff filed the statement as an attachment to her brief. *See* Docket entry no. 12-1.

inconsistent with Dr. Muse's own treatment notes and the record as a whole. Therefore, we find no medical evidence to establish plaintiff was unable to perform fine and gross movements effectively and/or she was unable to ambulate effectively. As a result, the plaintiff falls short of carrying her burden to meet a Listing.

Substantial evidence supports the ALJ's determination that the plaintiff was not presumptively disabled at Step Three of the sequential evaluation.

**RFC:** Initially, we note that the RFC need not mirror the findings of any one physician, as the ALJ is not bound to choose any one physician and adopt his/her findings as the appropriate RFC. Instead, it "is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). Here, the ALJ provided a thorough analysis of her reasoning on the RFC decision. She found the plaintiff capable of performing sedentary work except she could occasionally climb stairs, balance, stoop, kneel, crouch, and crawl, but she could never climb ladders. Further, the ALJ found the plaintiff able to use her arms bilaterally to occasionally reach overhead and frequently finger and feel. Finally, the ALJ determined the plaintiff must avoid extreme cold, extreme heat, and hazards such as machinery and unprotected heights. (Tr.. 11). In reaching this conclusion, the ALJ evaluated the plaintiff's credibility, the opinion evidence of the medical care providers, and the objective medical evidence. In discounting the plaintiff's subjective statements, the ALJ noted the absence of "strong support" in the objective medical evidence. The ALJ acknowledged a history of arthritis in the knees and shoulders, but not a record which matched the subjective assertions of the plaintiff. The ALJ also considered the plaintiff's daily activities, and the ability of the plaintiff's ability to

maintain her home. This analysis, guided by the factors set forth in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), was thorough and is supported by substantial evidence in the record.[3] Substantial evidence supports the ALJ's RFC analysis and conclusion.

**Past Relevant Work:** The ALJ questioned the vocational expert, specifically assuming that the hypothetical worker could occasionally reach overhead and could frequently finger and feel. (Tr. 39). The vocational expert replied that a worker with these abilities could work as an activity director, the job previously performed by the plaintiff. The plaintiff, citing Dr. Muse's medical source statement, contends the ALJ overstated her abilities because Dr. Muse indicated she was unable to reach, finger, or handle. The medical source statement of Muse, however, need not be accepted at face value, for the reasons previously discussed. There is no merit in this argument.

In summary, we find the ultimate decision of the Commissioner was supported by substantial evidence.

IT IS THEREFORE ORDERED that the final decision of the Commissioner is affirmed and plaintiff's complaint is dismissed with prejudice.

IT IS SO ORDERED this 19th day of May, 2015.

UNITED STATES MAGISTRATE JUDGE

---

[3] While the ALJ accorded "great weight" to the non-examining state agency medical consultants, the ALJ's RFC conclusion was supported by the findings of medical personnel who actually saw the plaintiff, and reliance on the state agency consultants was not critical to the ALJ's ruling. (Tr. 13).